Gene LEDEL et al., Appellants,

v.

BILL HAMES SHOWS, INC., Appellee.

No. 16423.

Court of Civil Appeals of Texas.

Fort Worth.

April 12, 1963.

Rehearing Denied May 10, 1963.

Martin, Moore & Tackett, and Elvin E. Tackett, Fort Worth, for appellants.

Simon & Simon, and Henry W. Simon, Fort Worth, for appellee.

MASSEY, Chief Justice.

This case is an appeal from a temporary injunction. Until May 22, 1962, appellant Gene Ledel was general manager of the appellee, Bill Hames Shows, Incorporated. Concurrent with the resignation of said appellant he organized Gene Ledel Shows, Incorporated, also an appellant herein. A carnival and show equipment were purchased and appellants went into business in competition with appellee.

July 23, 1962, a suit was filed by appellee against the appellants for injunctive relief and damages. Following a hearing before the court a decree of temporary injunction was entered on September 5, 1962. It prohibited *for a period of one year* action on the part of the appellants, as follows: the soliciting or negotiating for the right to present a carnival or midway show at certain places during fairs, festivals, shows and expositions, to-wit: The San Antonio Livestock Exposition, Inc., at San Antonio; the Austin Stock Show at Austin; the Livestock Show and Rodeo at Mercedes; the Brady Jubilee at Brady; The Old Settlers Reunion at Round Rock; The Old Settlers Reunion at Leonard; the exposition, fair or location at McKinney previously played by appellee; the Old Settlers Reunion at Alvarado; The Red River Valley Fair at Paris; The Cooke County Fair at Gainesville; The East Texas Fair at Marshall; the West Texas Fair at Abilene; the Tri-State Fair at Amarillo; and the spot, fair or exposition at Palestine previously played by appellee. By proviso there was excepted from the operation of the temporary injunction any of the places named if and in the event the promotors of the spots, fairs, cities, locations or expositions thereat should ask for and receive competitive bids for putting on the kind of entertainment as to which appellants and the appellee were in competition, and appellants were expressly permitted to make bids in instances where such were asked for, and to enter into contracts to perform and to perform the same in instances where their bids were accepted.

Entry of the order of temporary injunction was conditioned upon appellee filing a $25,000.00 bond securing the appellants as required by law. Appellee filed the bond and the temporary injunction became effective.

The record reflects that there was reprehensible conduct by appellant Ledel in the manner by which he severed his relationship with appellee company, in statements made by him to those with whom he had formerly contracted and performed in behalf of appellee, and in other respects calculated to cause harm to appellee. Undoubtedly Ledel was derelict of his duty in certain instances where he refrained from contracting or attempting to contract in behalf of appellee, while in its employ.

Such contracts would be to conduct carnivals and shows on dates one year from the time when carnivals and shows were being conducted for appellee by Ledel. On any trial of the merits the question for decision would not be the propriety of Ledel's conduct while appellee's employee, merely, but rather of the propriety of appellants' doing business in competition with appellee, or attempting to, with those same persons and concerns theretofore accustomed to contract with the appellee, exclusively, who remained free to contract because Ledel had not theretofore concluded contracts with them in behalf of the appellee at a time when he was appellee's general manager and as such in a fiduciary relationship with it. On the instant appeal from the order granting a temporary injunction we do not need to determine the question.

■ We have concluded that by the entry of the order granting the temporary injunction the appellee actually thereby obtained substantially all the relief which might be considered to have been properly obtainable on a final hearing. At least this is true with respect to that part of its cause of action which is purely equitable in character. In such an instance to award a temporary injunction is contrary to the general rule. Texas Foundries v. International Moulders & Foundry Workers Union, 1952, 151 Tex. 239, 248 S.W.2d 460, 464; Dallas Independent School District v. Daniel, 1959 (Tex.Civ.App., Dallas), 323 S.W.2d 639, 641. There are exceptions, but the case before us is not one in which any exception applies. Where that situation obtains and the whole object of the suit would be accomplished by the delay incident to an appeal, the trial judge should never grant a temporary injunction without at the same time arranging his docket so as to afford the defendants a trial on the merits without undue delay. Texas Foundries v. International Moulders & Foundry Workers Union, supra, 248 S.W.2d at p. 464.

■ Observable is the fact that appellee in this case is not founding its cause of action upon any contractual provision which bound Ledel to abstain from competition with appellee for any period, reasonable or not, but founds the premise for its right to equitable relief upon the theory that competition from said appellants would be in breach of trust of the fiduciary relationship existent during that period while Ledel was its general manager. It appears to us that competition from the appellants in the enterprise in which both appellants and appellee are engaged would not involve the use by the former of any trade secrets, etc., constituting property or property interests belonging to the latter. Were property rights of appellee involved, wrongful invasion thereof by Ledel could serve as a basis for injunction. To resign from one's employment and go into business in competition with one's former employer is, under ordinary circumstances, a constitutional right. It is for such reason that many employers have sought recourse to contractual agreements with their most capable employees by which, as a condition of employment, they protect themselves for a reasonable time and within a reasonable area from such competition in the event the employer-employee relationships should be discontinued.

When we observe that over seven months have expired between the time the temporary injunction was entered by the trial court and the time this opinion is returned, plus the consideration of that additional time which will be entailed before even the judgment of this court might become final, the operation of the decree of temporary injunction will have substantially protected the appellee from competition by appellants (at the places where they were enjoined from competing) for a term which will approach the maximum reasonable time, whether or not it might be held that the granting of the writ of temporary injunction was improper. The period for which the writ was effective was one year. So far as we are able to ascertain, the trial judge did not provide for an early trial

on the merits and no such trial has been held.

Our conclusion, therefore, is that the temporary injunction should be dissolved. In view of the operation of the same the main purpose of the suit (its equitable phase) has been accomplished without any trial on the merits. Therefore, to grant it actually amounted to a determination of the parties' rights without a trial. This is error which requires a reversal. James v. E. Weinstein & Sons, 1929 (Tex. Com.App.), 12 S.W.2d 959; Texas Foundries v. International Moulders & Foundry Workers Union, supra.

In their briefs the parties have devoted time to questions of law which go to a decision of the case on its merits on final hearing. These will not be discussed and our statements herein made are not intended to indicate any opinion of the court were this an appeal after a trial on the merits. The appeal is not from an order granting such injunctive relief, but from an order of temporary injunction.

Judgment is reversed. The temporary injunction is dissolved.